IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.H and Ch.H. by their parents and next friends PHOEBEROBERSON and CHRISTOPHER HOPKINS, PHOEBE ROBERSON, T'ERA HOPKINS<br><br>                Plaintiffs,<br><br>v.<br><br>DETECTIVE GROSSMAN, UNKNOWN OFFICERS, and the VILLAGE OF SAUK VILLAGE, DR. JILL GLICK, UNIVERSITY OF CHICAGO MEDICAL CENTER, DEBRA ROBINSON, DCFS and UNKNOWN DCFS SUPERVISORS<br>                Defendants. | Case No. 14-8174<br><br>Judge<br><br>Magistrate |

## COMPLAINT

NOW COMES Plaintiffs PHOEBE ROBERSON, CHRISTOPHER HOPKINS, C.H., Ch.H. and TERA HOPKINS, by and through their attorney, LAW OFFICE OF PHILLIP BRIGHAM, LLC, and complaining against Defendants, DETECTIVE GROSSMAN, UNKNOWN OFFICERS, VILLAGE OF SAUK VILLAGE, DR. JILL GLICK, UNIVERSITY OF CHICAGO MEDICAL CENTER("UofC"), DEBRA ROBINSON, DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("SCFS"), and UNKNOWN DCFS SUPERVISORS, states as follows:

## NATURE OF CLAIM

1. This action arises under 42 U.S.C. §1983, 28 U.S.C. §1367, to redress deprivations of the civil rights of plaintiffs through acts and/or omissions of defendants committed under color of law.

2. Specifically here, defendants deprived the plaintiffs of their rights under the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution

3. Additionally, the plaintiffs relies upon the Court's pendent jurisdiction to assert the Illinois State claims of malicious prosecution, and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(3).

5. Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. §1391, because all events or omissions giving rise to this claim occurred in this district.

## PARTIES

6. At all times herein mentioned, the plaintiffs were and are citizens of the United States and all reside within the jurisdiction of the Court.

7. At all times herein mentioned, DETECTIVE GROSSMAN, and UNKNOWN OFFICERS were officers employed by the VILLAGE OF SAUK VILLAGE and were acting under color of state law and as the employees or agents of the VILLAGE OF SAUK VILLAGE, Illinois. They are being sued in their individual capacities.

8. Defendant VILLAGE OF SAUK VILLAGE is a municipal corporation, duly organized under the laws of the State of Illinois. Defendant VILLAGE OF SAUK VILLAGE maintained, managed, and/or operated the Peoria Police Department.

9. Defendant, JILL GLICK, is of staff and employed constructively or actually by the UNIVERSITY OF CHICAGO MEDICAL CENTER acting under color of state law and as the employee or agent of the UNIVERSITY OF CHICAGO MEDICAL CENTER, she being sued in her individual and official capacities.

10. Defendant UNIVERSITY OF CHICAGO MEDICAL CENTER, upon information, is a nonprofit corporation, duly organized under the laws of the State of Illinois, who receives funds from the local, state and federal sources.

11. Defendant DEBRA ROBINSON and UNKNOWN DEFENDANTS were employed by The Department of Children and Family Services ("DCFS"), and were acting under color of state law and as the employees or agents of DCFS. They are being sued in their individual capacities.

12. DCFS is an entity that acts under the color of law by operation of enabling statutes and regulations.

**Facts**

**History of Mother-Minor Pre-Incident**

13. Plaintiff, PHOEBE ROBERSON ("Phoebe") birthed and reared four healthy children prior to the events complained of in this instant matter. Phoebe reared co-plaintiff Tera Hopkins, R.R (minor son) and the seized minors at issue. ("Ch.H. and C.H")

14. Phoebe has no prior history of allegations of abuse or neglect against her children.

15. Sometime in late August, 2013, Phoebe noticed that C.H. began crying or "fussing" more often than usual.

16. Phoebe continued to nurse C.H. while setting and attending a doctor's appointment for C.H. on September 25, 2013.

17. During said doctor's appointment medical staff informed Phoebe that C.H. suffered from a benign allergy. C.H. and Phoebe was cleared to go home by medical staff.

18. After returning home Phoebe noticed that C.H. sometimes became irritable during the times Phoebe attempted to teach C.H. how to hold her own bottle. Phoebe set another doctor's appointment, based on the doctor's availability, for mid-October because of C.H.'s irritability.

19. Sometime around sunrise on October 4, 2014, Phoebe attempted to lift C.H.'s arm for feeding and C.H. cried out uncontrollably. Phoebe rushed C.H. to St. James Hospital.

### The Hospital and DCFS

20. St. James Hospital staff examined C.H. and diagnosed her with fractures to her arm.

21. Per protocol, St. James Hospital staff reported C.H.'s injuries to The Department of Children and Family Services ("DCFS"). Debra Robinson ("Robinson") became the DCFS investigator into C.H.'s case.

22. Robinson and her supervisors willfully ignored the lack of evidence necessary to remove the seized minors.

23. DCFS implemented a "safety plan" prior to any investigation or finding of wrongdoing on the part of the Plaintiffs. Said "safety plan" included the removal of C.H. and Ch.H. from their family into the care of Phoebe's sister for an undetermined period of time.

24. The Village of Sauk Village Police Department was notified concerning C.H.'s injuries.

25. Dr. Jill Glick ("Dr. Glick"), in her capacity as a doctor with the Multidisciplinary Pediatric Education and Evaluation Consortium ("MPEEC") rendered an opinion ("Opinion") concerning the status of C.H.

26. Dr. Jill Glick ("Dr. Glick"), in her capacity as a doctor with MPEEC acted as a liason for The University of Chicago Medical Center and DCFS

27. University of Chicago receives funds from DCFS to support its participation in the MPEEC program.

28. A substantial percentage of the money from DCFS is allocated to Dr. Glick's salary thus creating a conflict of interest.

29. DCFS has an interest in receiving cases with the support and conformation of Dr. Glick's opinions.

30. Dr Glick has an ongoing relationship with Officer Grossman and the Village of Sauk Village Police Department.

31. Dr. Glick attempted to stop the Pediatric Orthopedist, Dr. Christopher Sullivan ("Dr. Sullivan"), from giving an opinion favorable to the Plaintiffs until *after* the police finished their investigation.

32. Dr. Glick also maliciously and erroneously stated in her opinion that the Sauk Village police charged Phoebe with "obstruction of justice" in their child abuse investigation.

33. Pediatric Orthopedist, Dr. Sullivan, gave an opinion against a finding of abuse concerning C.H. and refuting any criminality on the part of Plaintiffs.

34. Dr. Sullivan opinioned that C.H.'s fractures were the most common amongst children. Dr. Sullivan opinioned that C.H.'s injuries were subtle and thus difficult to identify by caregivers. Dr. Sullivan concluded that C.H.'s injuries were likely accidental.

35. The individual defendants, prior to arresting or seizing Plaintiffs Phoebe Roberson and T'era Hopkins, learned the aforementioned facts through their investigation.

## Arrest And Detention of Plaintiffs

36. Detective Grossman ("Grossman") of the Village of Sauk Village Police Department began an investigation into C.H.'s injuries.

37. Grossman never reviewed C.H.'s x-rays during his investigation.

38. Grossman willfully and wantonly ignored the exculpatory findings of Dr. Sullivan as it pertains to any criminality of the Plaintiffs.

39. Grossman learned during his investigation that at least six people lived in C.H.'s residence around the time of her injuries.

40. Grossman learned during his investigation that C.H. attended "Learn As You Grow Daycare Center" around the time of her injuries.

41. Grossman viewed several pictures of C.H. depicting her smiling and playing with her arms in the air taken around the time of her injuries.

42. Grossman learned that Phoebe Roberson had taken C.H. to a doctor's appointment with her primary care pediatrician due to C.H.'s fussiness around the time of her injuries, and that the primary care pediatrician had not noticed the injuries.

43. Grossman visited the Plaintiffs' residence. During said visit Grossman stated that he believed one of "the kids" abused C.H.

44. Grossmann went to Phoebe's son's school and attempted to pull R.R. out of class to question him. Grossman represented to school officials that he had permission to speak with the minor without the minor's parents being present, when he did not. School officials rejected Grossman's request because he did not have permission speak to R.R.

45. Although Plaintiffs had been fully cooperative with the defendants, upon learning of Grossman's belief that Phoebe's children harmed C.H., Phoebe told Grossman not to call her home and to stay away from her children. This infuriated Grossman. Grossman told Phoebe that she would regret it.

46. Grossman and his partner returned to the Plaintiffs' residence purportedly to talk to Phoebe. Phoebe did not want to talk about any accusations of criminality aimed at her and her family. The defendant-officers replied, "Since you don't want to talk you are going to jail".

47. The defendant-officers maliciously arrested P and T'era on the charge of "Child Endangerment" as defined as "Endangering the life or health of a child (a) A person commits endangering the life or health of a child when he or she knowingly: (1) causes or permits the life or health of a child under the age of 18 to be endangered. 720 ILCS 5.0/12C-5-A-1. Grossman lacked probable cause to arrest Plaintiff as to each stated element.

48. Grossman arrested the Phoebe and T'era in retaliation to what he deemed as a slight when Phoebe refused to let him accuse her family of criminality.

49. Upon Phoebe's arrest she immediately requested a lawyer, the defendant-officers continued to question Phoebe.

50. Subsequent to Plaintiffs'' arrest, Sauk Village police officers began harassing Plaintiffs. Said harassment included but was not limited to Sauk Village police officers curbing Phoebe over five times without cause.

51. Phoebe's uncle, Vincent Terry, attempted to file a complaint with the Sauk Village Police Department concerning the aforementioned misconduct. A "white shirt" policy maker ignored Mr. Terry's complaint.

52. Grossman falsely reported to DCFS that Phoebe was being uncooperative to punish her by persuading DCFS to remove her kids.

53. DCFS ordered C.H. and Ch.H. removed from their family. This seizure occurred despite a complete lack of evidence giving rise to any emergency need to involuntarily take C.H or Ch.H. into state protective custody.

54. Grossman falsified police reports, and distorted witness statements in support of his affidavit to secure probable cause to arrest Plaintiffs, Phoebe Roberson and T'era Hopkins.

**Illinois Law and State Policies and Procedures Regarding the Taking of Children from Their Parents**

55. Pursuant to the Illinois Abused and Neglected Child Reporting Act ("ANCRA"), DCFS receives Hotline calls when any person makes a call based upon "reasonable cause to believe a child may be an abused child or a neglected child." 325 ILCS 5/4. ANCRA requires that DCFS promptly initiate an investigation of the merits of calls it accepts, *id*. at 5/7,sometimes working jointly with law enforcement authorities if the allegations in the call give rise to a potential criminal complaint. *Id*. at 5/7.3.

56. Under Illinois law, police officers, doctors, and DCFS investigative employees in the DCFS Division of Child Protection (as "designated" DCFS employees), and only such persons, have the legal authority to remove a child from his or her parent against the will of the parent. 325 ILCS 5/5. This authority—the authority to take temporary protective custody—is limited to only those circumstances when "there is not time to apply for a court order" and when leaving the child in the custody of his or her parent(s) would "endanger[] the child's health or safety." *Id*.

57. Once taken into temporary protective custody, a child must be brought before a judicial officer within 48 hours, exclusive of holidays and weekends; or else released back to the custody of his or her parents or guardians. 705 ILCS 405/2-9.

58. DCFS policies require that the taking of protective custody should be approved by a DCFS supervisor and child protection manager.

59. Illinois law does not authorize DCFS investigative employees to issue directives to families concerning their living conditions. To the extent DCFS determines that a family should live under restrictions (such as having "no unsupervised contact" with their children), DCFS may request a petition be filed with a juvenile court. The juvenile court does have the authority to issue such directives' pursuant to the Juvenile Court Act, as to children for whom there is probable cause to believe they are abused or neglected, 705 ILCS 405/2-10 (requiring dismissal of petitions for which there is not probable cause), and to enter orders of protection requiring families to abide by restrictive conditions on their family life. *Id*. at 2-25.

60. In the event DCFS does secure the filing of a petition against a family after it takes protective custody of the child without a court order, if it seeks to maintain temporary custody thereafter, the Juvenile Court Act requires that the court must find that there is "immediate and urgent necessity" for the safety of the child that he or she be placed outside the custody of his or her parents. 705 ILCS 405/2-10.

Regardless of whether DCFS takes protective custody of a child following a Hotline call, and regardless of whether it seeks or secures the filing of a juvenile court petition alleging a child is abused or neglected, DCFS regulations require it to complete

investigations ofHotline calls within 60 days, except that such time may be extended for good cause.

61. At the conclusion of the investigation, DCFS investigators determine if the allegations under investigation are "indicated," meaning that credible evidence of abuse or neglect was found, or "unfounded," meaning that DCFS did not find credible evidence of abuse or neglect. *Id*.

62. In the event credible evidence is found, the alleged perpetrator is afforded the right to take an administrative appeal from that decision and obtain review in the DCFS administrative hearings unit. Ill. Admin. Code tit. 89, § 336.

63. By reason of the above-described acts and omissions of the defendants, Plaintiffs have sustained injuries, humiliation, and indignities, and suffered great mental and emotional pain and suffering. Phoebe also had an "indicated finding" entered against her.

64. By reason of the above-described acts and omissions of the defendants, Plaintiffs have been denied custody and consortium of C.H and Ch. H. resulting in humiliation, indignities, great mental pain, emotional pain and suffering.

65. The actions of Defendants foreseeably caused each member of the Plaintiffs' family great emotional harm, including a family separation lasting nearly a year and continuing. The harm to Plaintiffs' personal security, privacy, and family life has been severe and long-term.

66. The aforementioned acts of the defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for the plaintiff's rights, justify the award of exemplary and punitive damages.

67. By reason of the above actions Plaintiffs seek redress for the deprivation of their fundamental liberty interests in familial association by Defendants' actions taken under color of state law. They seek to vindicate their rights under the First, Fourth, and Fourteenth Amendments. Pursuant to 42U.S.C. § 1983.

68. Plaintiffs was required to retain an attorney to initiate and prosecute legal proceedings, and otherwise render legal assistance to him in the present action, so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiffs requests payment by the named defendants for a reasonable sum for attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other provision set by law.

## COUNT I

## FALSE ARREST

69. Plaintiffs incorporate and re-allege paragraphs 1-68, as though set forth herein in their entirety.

70. The seizure and/or arrest of the plaintiffs were effected without probable cause, and was unreasonable.

71. By reason of the conduct of the individual defendants and unknown officers, the plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

## COUNT II

## 42 U.S.C. § 1983 Claim for Violation of Substantive Due Process Rights to Familial Association

72. Plaintiffs incorporate paragraphs 1-71 above as if fully set forth herein. The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

73. Defendants, acting individually and/or in concert with one another, violated Plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and family privacy by arbitrarily separating C.H. and Ch.H from their parents and taking them into State temporary protective custody without possessing the requisite definite and articulable evidence giving rise to probable cause or reasonable suspicion to believe that she had been or would be abused or neglected.

74. Defendants, acting individually and/or in concert with one another, violated

75. Plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and family privacy by conditioning the return of C.H. and Ch.H. upon acceptance of severe restrictions on Plaintiffs' exercise of their rights to reside together as a family without interference by the State Defendants, acting individually and/or in concert with one another, violated Plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and family privacy without the constitutionally requisite evidence required to impose such restrictions.

76. The actions and conduct of Defendants caused injury to Plaintiffs.

77. As relief, Plaintiffs seek damages for each Plaintiff, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court

**COUNT III**

**DUE PROCESS-"RIGHT TO WORK"-1983, AND INJUNCTIVE RELIEF**

78. Plaintiffs incorporate and reallege paragraphs 1–77, as though set forth herein in their entirety.

79. Plaintiff Phoebe has a protected liberty interests in her employment.

80. DCFS procedures deprive her of the liberty interest in pursuing the occupation of her choice, health care for disabled adults.

81. Adult health care workers effectively are barred from future employment in the adult health care field once an indicated finding of child abuse or neglect against them is disclosed to, and used by, licensing agencies and present or prospective employers.

82. Being indicated for child abuse or neglect in a report maintained on the state central register places an undue burden on Phoebe's employment prospects.

83. There are no timely procedural safeguards established by DCFS to protect Phoebe's liberty interest causing Plaintiff injury,

84. Defendants will deprive Plaintiff of her liberty interests in employment and future employment, by the disclosing of adverse findings to employers, without timely and adequate process.

85. Defendants should be enjoined from disclosing adverse findings against Phoebe in the underlying matter to employers, without timely and adequate process.

## COUNT IV

### 42 U.S.C. § 1983 Claim for Violation of the Fourth Amendment Right Not to Be Subject to an Unreasonable Seizure

86. The Plaintiffs in Count IV are C.H. and Ch.H.

87. The Count I Plaintiff incorporates paragraphs 1-85 above as if fully set forth herein.

Defendants, acting individually and/or in concert with one another, violated the rights of Plaintiffs under the Fourth Amendment to the United States Constitution to be free from an unreasonable seizure, by directing or engaging in their seizure from the care and custody of their parents: (a) without probable cause or reasonable suspicion to believe that they had been abused or neglected or was in immediate danger of such abuse or neglect;(b) without a court order; or (c) in the absence of exigent circumstances. The actions and conduct of Defendants set forth above caused injury to the Plaintiffs.

88. As relief, Plaintiffs demands return of C.H. and Ch.H., compensatory damages against Defendants and, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate..

89. As relief, Plaintiffs also seeks an award of punitive damages against Defendants

## COUNT V.

## DUE PROCESS –BRADY VIOLATION

90. Plaintiffs restate and reallege all the statements made in paragraphs 1-89, of this Complaint as though fully set forth herein.

91. The individual defendants, GROSSMAN and UNKNOWN OFFICERS deprived Plaintiffs of fair criminal proceedings by engaging in multiple acts which include, but are not limited to, failing to disclose known exculpatory evidence, ignoring exculpatory evidence, submitting false affidavits, failing to investigate actual innocence of Plaintiffs, submitting false charges as contained in the criminal complaints, submitting false police reports, omitting exculpatory evidence from police reports, swearing to false statements, and otherwise acting to influence and persuade the State's Attorney to prosecute Plaintiffs and to deny Plaintiffs fair legal proceedings.

92. These acts were directed toward Plaintiffs, were intentional and material, and therefore were in violation of Plaintiffs' due process rights.

93. By reason of the conduct of the individual defendants, Plaintiffs were deprived of rights, privileges and immunities secured to them by the due process clause of the Fourteenth Amendments to the Constitution of the United States.

94. As a proximate result of this deprivation of due process, Plaintiffs suffered extreme physical, emotional and pecuniary damage.

## COUNT VI

## MALICIOUS PROSECUTION AGAINST ALL INDIVIDUAL DEFENDANTS

95. Plaintiffs restate and re-allege all the statements made in paragraphs 1-94 of this Complaint as though set forth herein.

96. The individual defendants maliciously caused criminal charges to be filed and prosecuted against Plaintiffs Phoebe and T'era. There was no probable cause for the institution of criminal or civil charges against Plaintiffs. The criminal and/or civil proceedings were commenced and continued maliciously.

97. Defendants facilitated this malicious prosecution by failing to investigate, falsifying evidence, creating false police reports, falsifying written criminal charges, and giving false and perjured information under oath.

98. Plaintiffs were wrongfully incarcerated, and then wrongfully prosecuted in a criminal proceeding until said proceedings were resolved in the favor of both Phoebe and T'era.

99. Plaintiff was injured emotionally and physically from the loss of liberty, wrongful incarceration and the deprivation of related rights.

100. The defendants are liable to Plaintiffs under Illinois law for the state supplemental claim of malicious prosecution.

101. Defendant VILLAGE OF SAUK VILLAGE, DCFS, and UofC are liable pursuant to the doctrine of respondeat superior.

### COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL INDIVIDUAL DEFENDANTS

102. Plaintiff incorporates and re-alleges paragraphs 1-101, as though set forth herein.

103. The conduct of the defendants was extreme and outrageous. The individual defendants intended to inflict severe emotional distress on Plaintiffs, or knew that there was a high probability that their conduct would do so.

104. Defendants' conduct did, in fact, cause Plaintiff severe emotional distress.

105. Defendant VILLAGE OF SAUK VILLAGE, U of C, and DCFS are liable for the acts of the individual defendants pursuant to the doctrine of respondeat superior.

### COUNT VIII - 42 U.S.C. §1983
### *Monell* CLAIM AGAINST DCFS

106. Plaintiff restates and realleges all the statements made in paragraphs 6-35 of this Complaint as though fully set forth herein.

107. The individual defendants acted pursuant to one or more of the following interrelated policies, practices and/or customs of Defendant DCFS through AGENCY:

    a) By failing to provide an immediate pre-removal hearing where a "preponderance of the evidence" standard is correctly applied because equitable weight is not given to evidence that doesn't support an "indicated finding". This happens because DCFS

      constructively or actually allows and encourages its personnel to do the same.

    b) Failing to train their personnel in "preponderance of the evidence" standard and parental rights.

    c) allowing and encouraging the constitutionally untenable act of recording "indicated reports" on the central register and disclosing the same to employers before the underlying case is settled;

108. The interrelated policies, practices and/or customs as set forth above were maintained by DCFS with deliberate indifference, proximately causing the injuries suffered by Plaintiffs.

## COUNT IV

## CONSPIRACY PURSUANT TO 42 U.S.C. §1983 AGAINS PLAINTIFFS BY ALL DEFENDANTS

109. Plaintiff restates and realleges all the statements made in paragraphs 1-108 of this Complaint as though fully set forth herein.

110. The above acts were committed with knowledge and by agreement of defendants. to willfully act in concert to violate the constitutional rights of Plaintiffs.

111. Defendants are therefore liable to plaintiffs for conspiracy pursuant to 42 U.S.C. §1983.

## COUNT X

## CLAIM UNDER 745 ILCS 10/9-102 AGAINST DEFENDANT VILLAGE OF SAUK VILLAGE, U of C, and DCFS

112. Plaintiff restates and realleges all the statements made in paragraphs 1-111 of this Complaint as though fully set forth herein.

113. Defendant VILLAGE OF SAUK VILLAGE, DCFS and UofC were, at all times material to this Complaint, the employers of the individual defendants respectively.

114. All individual defendants committed the acts alleged above in the scope of their employment as employees of Defendant VILLAGE OF SAUK VILLAGE,., U of C, and DCFS.

WHEREFORE, Plaintiff requests judgment against all individual defendants, and:

A. That defendants be required to pay Plaintiffs general damages, including emotional distress, in a sum to be ascertained at a trial of this matter,

B. That individual defendants be required to pay Plaintiffs special damages,

C. That the entity defendants be required to reimburse the individual defendants pursuant to 745 ILCS 10/9-102.

D. That individual defendants be required to pay plaintiffs attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other applicable provision,

E. That individual defendants be required to pay plaintiffs exemplary and punitive damages in a sum to be ascertained at a trial of this matter,

F. That defendants be required to pay plaintiffs costs of the suit herein incurred, and

G. That Plaintiffs be granted such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**

Dated: October 17, 2014 /s/Phillip A. Brigham
Phillip A. Brigham

Phillip A. Brigham (ARDC No. 6299171)
LAW OFFICE OF PHILLIP BRIGHAM, LLC
55 East Jackson, Suite 1050
Chicago, Illinois 60604