**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C.H. and Ch.H., by their parents and next friends PHOEBE ROBERSON and CHRISTOPHER HOPKINS, PHOEBE ROBERSON, T'ERA HOPKINS, | ) ) ) ) | |
| | ) | No. 14 C 8174 |
| Plaintiffs, | ) ) | Hon. Jorge L. Alonso |
| v. | ) ) | |
| DETECTIVE GROSSMAN, UNKNOWN OFFICERS, and the VILLAGE OF SAUK VILLAGE, DR. JILL GLICK, UNIVERSITY OF CHICAGO MEDICAL CENTER, DEBRA ROBINSON, DCFS, and UNKNOWN DCFS SUPERVISORS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS DEBRA ROBINSON AND DCFS'S MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO DISMISS**

NOW COME the Defendants, Debra Robinson and the Illinois Department of Children

and Family Services, by their attorney, Lisa Madigan, Attorney General for the State of Illinois,

and pursuant to Fed. R. Civ. P. 12(b)(6) move this Court to dismiss this action.  In support

thereof, Defendants DCFS and Robinson state as follows.

**Introduction**

Plaintiffs, Phoebe Roberson, Christopher Hopkins, and T'era Hopkins, as parents and

next friends to C.H. and Ch.H, minors, bring this ten-count complaint against the Illinois

Department of Children and Family Services ("DCFS"), Debra Robinson, an employee of the

DCFS, and Unknown DCFS Supervisors.  In Count I, Plaintiffs allege that Defendants seized or

arrested Plaintiffs without probable cause in violation of their Fourth and Fourteenth Amendment

rights.  In Count II, Plaintiffs claim that Defendants violated their substantive due process rights

to familial association by taking C.H. and Ch.H. into protective custody without possessing

sufficient evidence giving rise to a reasonable suspicion that they had been or would be abused

or neglected.  Plaintiffs also claim that Defendants violated their substantive due process rights

by restricting Plaintiffs' rights to live together.  In Count III, Plaintiff Phoebe Roberson claims

that DCFS procedures impaired her liberty interests in her employment as an adult health care

worker and that she was indicated for child abuse without procedural safeguards.  She also

claims that DCFS damaged her by disclosing adverse findings to her employers without adequate

process.  In Count IV, Plaintiffs C.H. and Ch.H. claim that they were seized from their parents in

violation of their Fourth Amendment rights.  Count V is directed only to Detective Grossman

and Unknown Sauk Village Officers.  In Count VI, Plaintiffs bring a state law claim for

malicious prosecution against all individual Defendants.  In Count VII, Plaintiffs bring a state

law claim for intentional infliction of emotional distress.  In Count VIII, Plaintiffs bring a *Monell*

claim against DCFS, alleging that the DCFS policies for removal of children and reaching

indicated findings are unconstitutional.  In Count IX, Plaintiffs allege that Defendants conspired

to violate Plaintiffs' constitutional rights in violation of 42 U.S.C. §1983.  Finally, in Count X,

Plaintiffs claim that the institutional Defendants, including DCFS, as employers of the individual

defendants, violated 745 ILCS 10/9-102.  This Court should dismiss the Complaint.

### Statement of Facts

Plaintiff Phoebe Roberson is the mother of T'era Hopkins, R.R., C.H. and Ch.H.

Complaint ("Compl.") ¶13.  In late August, 2013, Roberson noticed that C.H. was unusually

fussy.  Compl. ¶15.  She made a doctor's appointment for C.H. for September 25, 2013.  Compl.

¶ 16.  During this appointment, the doctor advised Roberson that C.H. had allergies and sent

C.H. home.  Roberson noticed that C.H. would become irritable when Roberson was teaching

C.H. to hold a bottle and scheduled another doctor's appointment for mid-October.  Compl. ¶18.

In the early morning of October 4, 2014, Roberson tried to lift C.H.'s arm and C.H. cried

uncontrollably. Roberson took C.H. to St. James Hospital. Compl. ¶19. St. James Hospital staff examined C.H. and determined that she had fractures to her arm. Compl. ¶20. The hospital staff reported the injuries to DCFS, and Debra Robinson, DCFS child abuse investigator, was assigned to the investigation. Compl. ¶21. DCFS implemented a safety plan before the child abuse investigation was completed. This safety plan placed C.H. and Ch.H. with Roberson's sister for an undetermined period of time. Compl. ¶23. The Sauk Village Police Department was notified of C.H.'s injuries. Compl. ¶24. Dr. Jill Glick, a physician who is a member of the Multidisciplinary Pediatric Evaluation and Education Consortium ("MPEEC") opined that the injuries to C.H. were the result of abuse. Compl. ¶25, 33. Dr. Sullivan, a pediatric orthopedist, opined that the injuries were likely accidental. Compl. ¶33-34.

Sauk Village Police Detective Grossman investigated C.H.'s injuries. Compl. ¶36. Detective Grossman and other Sauk Village police officers arrested Roberson and T'era Hopkins for child endangerment. Compl. ¶47. DCFS removed C.H. and Ch.H. from Roberson and placed them in protective custody. Compl. ¶53. The children have not been returned to Plaintiffs' custody. Compl. ¶65. The investigation into C.H.'s injuries resulted in an indicated finding against Roberson. Compl. ¶63.

[REDACTED]

---

[1] This Court may take judicial notice of state court orders when ruling on a Rule 12(b)(6) motion to dismiss. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n. 4 (7th Cir. 2000).



[redacted]

[redacted]

[redacted]

**Statutory and Regulatory Background:**
**The Illinois Legal Framework for the Protection of Abused and Neglected Children**

## I. Child Abuse Investigations

To protect children from abuse and neglect, Illinois has enacted several statutes, including the Abused and Neglected Child Reporting Act (ANCRA). 325 ILCS 5/1. Pursuant to ANCRA, DCFS is charged with the responsibility of receiving reports of child abuse and neglect

and is the sole Illinois agency responsible for investigating reports of child abuse or neglect. 325 ILCS 5/2, 5/7.3.

Upon receiving a report that a child may have been abused or neglected, the DCFS Child Protective Services Unit investigates the report and determines whether the report is "indicated," meaning supported by credible evidence, or "unfounded," meaning not supported by credible evidence. 325 ILCS 5/3, 5/7.12. Credible evidence exists when "the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Admin. Code, Ch. III, Subch. a, § 300.20.[2]

If the individual who is the subject of the investigation is a child care worker, the individual has a right to an "Administrator's teleconference," a process afforded to child care employees before the indicated finding is registered on the State Central Register. The child care worker has the opportunity to present documentary or other evidence in support of his position. 89 Ill. Admin. Code, ch. III, Subch. a, §300.160(c)(4). After the administrator conducting the teleconference reaches a decision, the decision to indicate or unfound is final and that decision is transmitted for entry on the State Central Register.

Final reports are recorded in the state central register. 325 ILCS 5/7.7. "All records concerning reports of child abuse or neglect … shall be confidential and shall not be disclosed except as specifically authorized by this Act or other applicable law." 325 ILCS 5/11. Only certain entities and persons, including the Illinois Department of Professional Regulation and the operator of a licensed child care facility, are able to obtain information about child abuse and neglect investigations when the information pertains to an employee or licensee. 325 ILCS 5/11.1(12), 5/11.1(14), 5/11.1(15).

---

[2] DCFS maintains an allegation system that assigns a number code to specific allegations of child abuse or neglect. Each allegation is defined by Department rule and focuses on the harm or the risk of harm to the child. 89 Ill. Admin. Code, ch. III, Subch. a, §300, Appendix B. Indicated allegations are retained according to a specific schedule. 89 Ill. Admin. Code, ch. III, Subch.f, §431.30.

Within 10 days after the final determination has been entered into the central register, DCFS sends a written notice to the alleged perpetrator of child abuse or neglect that a report has been indicated or unfounded. 89 Ill. Admin. Code, Ch. III, Subch. b, §336.40(a). Upon request, a person who has been indicated as a perpetrator of child abuse has the right to an administrative hearing to determine whether the record of the report should be amended or removed. 325 ILCS 5/7.16. At the hearing, the appellant may present evidence and witnesses, and cross examine witnesses. 89 Ill. Admin. Code , Ch. III, Subch. b, §336.100(c). DCFS bears the burden of proof that the indicated finding is supported by a preponderance of the evidence. 89 Ill. Admin. Code, Ch. III, Subch. b, §336.100(e).

After the evidentiary hearing, the administrative law judge provides a recommended decision to the DCFS Director, who accepts, rejects or modifies the decision and issues a final administrative decision. *Id.* at §336.150(a). The Director's final decision may be appealed to the circuit court, pursuant to the Illinois Administrative Review Law. 735 ILCS 5/3–101 *et seq.*

## II.    Juvenile Court Proceedings

In addition, temporary custody of a child may be taken under certain circumstances. If a child is endangered in his or her home, an "officer of a local law enforcement agency" or a "designated employee of the Department" is statutorily authorized to take "temporary protective custody of the child without the consent of the person responsible for the child's welfare." 325 ILCS 5/5. Protective custody is authorized if the person taking it "(1) . . . has reason to believe that the child cannot be cared for at home or in the custody of the person responsible for the child's welfare without endangering the child's health and safety; and (2) there is not time to apply for a court order under the Juvenile Court Act of 1987 for temporary custody of the child." *Id.* Protective custody may be taken before juvenile court proceedings, but a child taken into

protective custody must be taken before a judicial officer for a temporary custody hearing to determine whether he or she shall be further held in custody. 705 ILCS 405/2-9.

At the temporary custody hearing, the state juvenile court judge is authorized to order a child removed from her parents' custody. 705 ILCS 405/2-10. A juvenile court can order such temporary custody upon finding (1) that "there is probable cause to believe that the minor is abused, neglected or dependent," (2) that "it is a matter of immediate and urgent necessity for the safety and protection of the minor," and (3) that "reasonable efforts have been made or that . . . no efforts reasonably can be made to prevent or eliminate the necessity of removal of the minor from his or her home." 705 ILCS 405/2-10(2). If temporary custody is ordered, the juvenile court must commence an adjudicatory hearing to determine whether abuse or neglect occurred, within 90 days of the date of the filing of the petition. 705 ILCS 405/2-14(b).

Following the adjudicatory hearing, the juvenile court conducts a dispositional hearing at which the court determines whether it is in the best interests of the minor to be made a ward of the court. 705 ILCS 405/2-22(1). The court has the authority to enter orders of protection based on the health, safety and best interests of the minor, including orders with respect to visitation. 705 ILCS 405/2-25(1(b).

## ARGUMENT

### I.      This Case Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive Rule 12(b)(6) scrutiny, the complaint must put the defendants on "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In considering the sufficiency of a complaint under Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor. See, e.g., *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).[3]

In *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), the Court expanded on the plausibility

requirement and explained that the plaintiff must allege facts constituting "more than a sheer

possibility that a defendant has acted unlawfully." *Id.*

### A. The Eleventh Amendment Bars This Action Against DCFS.

Plaintiffs are suing DCFS for money damages. Compl., Prayer for Relief, ¶¶A, C, F.

With limited exceptions, the Eleventh Amendment immunizes states and their agencies against

suits brought in federal court. *Council 31 of the Am. Fed'n of State, Cnty. and Mun.Emps., AFL–*

*CIO v. Quinn,* 680 F.3d 875, 881 (7th Cir. 2012). DCFS is a state agency that is entitled to those

protections. *Woods v. Ill. Dep't of Children and Family Servs.,* 710 F.3d 762, 764–65 (7th Cir.

2013). The Eleventh Amendment bars "suit[s] by private parties seeking to impose a liability

which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651,

663 (1974). The Eleventh Amendment bars this action against DCFS.

### B. Plaintiffs' False Arrest Claim Should Be Dismissed (Count I).

In Count I, Plaintiffs allege that Defendants seized or arrested Plaintiffs without probable

cause and in violation of their Fourth and Fourteenth Amendment rights**.** Compl. ¶¶69-71.

Robinson did not violate Plaintiffs' Fourth Amendment rights: there are no facts alleged that

Defendant Robinson seized or arrested Plaintiffs Phoebe Roberson, Christopher Hopkins, or

T'era Hopkins.[4] The Supreme Court stated "We adhere to the view that a person is 'seized' only

when, by means of physical force or a show of authority, his freedom of movement is restrained.

Only when such restraint is imposed is there any foundation whatever for invoking constitutional

safeguards." *U.S. v. Mendenhall*, 100 S. Ct. 1870, 1877 (1980). In *Hernandez v. Foster,* a case

---

[3] Plaintiffs' complaint against "Unknown Supervisors" should be dismissed: there are no claims made against or facts alleged concerning unknown supervisors.
[4] Plaintiffs C.H. and Ch.H. bring a claim for unreasonable seizure in violation of their constitutional rights in Count IV, and this claim is addressed at pp. 12-13.

involving protective custody and a safety plan, the Court of Appeals found that the child's claim

was properly analyzed under the Fourth Amendment because that constitutional provision

protects the right that was allegedly infringed upon.  However, the parents were not seized and

did not have a Fourth Amendment claim:  their claims were properly analyzed under substantive

due process.  *Hernandez v. Foster,* 657 F.3d 463, 474 (7th Cir. 2011).  The same analysis is

applicable here.  The children's Fourth Amendment claim (Count IV) is addressed at pp. 12-13,

and  the other Plaintiffs' substantive due process claim (Count II)  is addressed below.

### C.    Plaintiffs Substantive Due Process Rights Were Not Violated (Count II).

Defendant Robinson did not violate Plaintiffs' substantive due process rights in

conducting the child abuse investigation and arranging a safety plan and taking protective

custody of the minors.  The Supreme Court recognizes the right to familial relations as a part of

substantive due process.  *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1018 (7th Cir. 2000).  The

courts balance the right to familial relations with the government's compelling interest in

protecting children from abuse, "especially in cases where children are removed from their

homes. …  In balancing these competing interests, courts have recognized that a state has no

interest in protecting children from their parents unless it has some definite and articulable

evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent

danger of abuse." *Id.* at 1019.  The ███████████████ fractures to C.H.'s arms and Dr. Jill

Glick's determination that the injuries were the result of abuse provide ample evidence of abuse

sufficient to satisfy the *Brokaw* standard.

### 1.    Defendant Robinson Is Entitled to Qualified Immunity.

Even if Defendant Robinson's conduct violated Plaintiffs' constitutional rights,

Defendant Robinson is entitled to qualified immunity.  "Qualified immunity protects government

officials from individual liability under Section 1983 for actions taken while performing

discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1022 (7th Cir. 2000). Defendant Robinson certainly did not know or suspect that her actions violated Plaintiffs' constitutional rights. She is entitled to qualified immunity for the alleged violation of Plaintiffs' constitutional rights. Unlike the defendants in *Brokaw*, no one removed a terrified child screaming from his home in the dead of night for no reason. *Id.* at 1007-08. Defendant Robinson's actions were based on evidence of child abuse. Indeed, ███

███████████████████████████████████████████████████████

███████████████████████████

### 2. This Action Is Barred by the Rooker-Feldman Doctrine.

The *Rooker-Feldman* doctrine holds that federal courts other than the Supreme Court lack jurisdiction to review the decisions of state courts. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). Under the doctrine, parties seeking review of state court decisions must pursue relief in state court. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). The *Rooker-Feldman* doctrine applies not only to direct attacks on state court judgments but to "claims that are inextricably intertwined with state court determinations." *Id.* at 554; *see also 4907 Corp. v. Town of Cicero,* 220 F.3d 522, 527 (7th Cir. 2000).

Plaintiffs C.H. and Ch.H. were taken into protective custody. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

10

 Plaintiffs' claim should be dismissed.

### 3. Plaintiffs' Claims Are Subject to Dismissal on Preclusion Grounds.

Under the doctrine of issue preclusion, federal courts must give state court judgments the same preclusion as the court in that state would. *See Jensen v. Foley,* 295 F.3d 745, 748 (7th Cir. 2002) (holding that the federal court was barred by the doctrine of issue preclusion from reconsidering the state court issue in the federal lawsuit). Issue preclusion applies in Illinois when the same controlling issue of fact material to the determination is at stake in two consecutive cases, and that issue was adjudicated against a party in the first suit. *Id.* at 748-49. The ████████████████████ warrant dismissal of Plaintiffs' claims.

### D. Defendants Did Not Violate Plaintiff's Liberty Interests in Her Employment (Count III).

In Count III, Plaintiff Phoebe Roberson alleges that she has a protected liberty interest in her employment as an adult health care worker, that DCFS procedures deprive her of her liberty

interest in pursuing her occupation, that there are no procedural safeguards to protect her liberty interest and that Defendants will deprive her of her liberty interests by disclosing the findings to employers and should therefore be enjoined from making a future disclosure without due process. Compl. ¶¶79-85. Plaintiff is wrong. Plaintiff had the right to challenge the indicated finding through an administrative hearing process and to appeal any adverse decision to the circuit court. Those processes provide for notice and an opportunity for a hearing, and satisfy due process. *See* discussion at p. 6.

To state a claim for deprivation of occupational liberty, a plaintiff must show that "(1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publically disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Goecks v. Pedley,* 732 F. Supp. 2d 828, 832 (W.D. Wis. 2010) *aff'd,* 437 F. App'x 505 (7th Cir. 2011), citing *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991); *Head v. Chicago Sch. Reform Bd. of Trustees,* 225 F.3d 794, 801 (7th Cir.2000). Plaintiff does not claim that there has been a disclosure but rather that DCFS should be enjoined from disclosing the indicated finding in the future. Compl. ¶¶84, 85. Plaintiff does not state a claim for violation of her liberty interest in employment as an adult health care worker. This claim should be dismissed.

**E. Defendants Did Not Violate Plaintiffs C.H. and Ch.H's Fourth Amendment Rights (Count IV).**

In Count IV, Plaintiffs claim that Defendants violated Plaintiffs C.H. and Ch.H.'s Fourth Amendment rights by removing them from their parents' custody " (a) without probable cause or reasonable suspicion to believe that they had been abused or neglected or was in immediate danger of such abuse or neglect; (b) without a court order; or (c) in the absence of exigent circumstances." Compl. ¶87. Plaintiffs demand the return of C.H. and Ch.H. Compl. ¶88.

12

Seizure alone is not enough for Fourth Amendment liability under § 1983; the seizure

must be unreasonable. *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 1999). "In the

context of removing a child from his home and family, a seizure is reasonable if it is pursuant to

court order, if it is supported by probable cause, or if it is justified by exigent circumstances

meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'"

*Id.* (citing *Tenebaum v. Williams*, 193 F.3d at 605 (2nd Cir. 1999)).

Defendant Robinson's seizure of C.H. and Ch.H. was reasonable. She knew that C.H.

had sustained ██████████████ fractures of both arms. Dr. Jill Glick, a pediatrician

specializing in child abuse, determined that the injury was the result of abuse. ██████████

████████████████████████████████████████████████████████████

Even if this Court decides that the seizure was not reasonable, Defendant Robinson is entitled to

qualified immunity for the alleged violation of the Fourth Amendment. This claim is also barred

pursuant to the *Rooker-Feldman* doctrine and issue preclusion. *See* discussion at pp. 9-11.

**F.      Plaintiffs' State Law Claims Should Be Dismissed (Counts VI and VII).**

Once this Court dismisses all of the federal claims against the Defendants, this Court

should dismiss the state law claims. *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593

F.3d 507, 513 (7th Cir. 2010). In the alternative, this Court should decide that Plaintiffs fail to

state a state law claim.[5]

Plaintiffs' claim for malicious prosecution against Defendant Robinson should be

dismissed. Compl. ¶¶96-101. Under Illinois law, a plaintiff claiming malicious prosecution

must prove: (1) the defendant commenced or continued an original criminal or civil judicial

proceeding; (2) that proceeding ended in favor of the plaintiff; (3) the absence of probable cause

for the proceeding; (4) malice; and (5) damages. All of these elements must be present; the

[5] Plaintiffs also purport to bring this claim against DCFS pursuant to the doctrine of *respondeat superior*. This is a claim against the state and is barred by the Eleventh Amendment. See discussion at p. 8.

absence of even one will preclude recovery for malicious prosecution. *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001). Plaintiff does not allege facts sufficient to state a claim against Defendant Robinson. At the very least, Defendant Robinson did not commence or continue an action against Plaintiffs and no proceeding ended in Plaintiffs' favor.

Plaintiffs' claim for intentional infliction of emotional distress should be dismissed. Compl. ¶¶102-105. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts which establish that a defendant's conduct was extreme and outrageous. *Doe v. Calumet City*, 161 Ill. 2d 374, 391 (1994). "[L]iability exists only where such conduct has been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . ..'" *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 469 (1st Dist. 1984). There are no facts supporting a claim of outrageous conduct on the part of Defendant Robinson.

Even if this Court determines that Plaintiffs state a claim, Defendant Robinson is entitled to public official immunity. The doctrine of public official immunity protects state employees from liability for acts falling within their official discretion. Immunity "extends to acts that a public employee undertakes in the good-faith exercise of discretion, even if his or her conduct was wilful and wanton. The only conduct to which the immunity does not extend is that based on corrupt or malicious motives." *Midamerica Trust Co. v. Moffatt,* 158 Ill. App. 3d 372, 379, 511 (1987). Defendant Robinson is entitled to public official immunity from the state law claims.

G.     **A *Monell* Claim Does Not Lie Against the State (Count VIII).**

In Count VIII, Plaintiffs purport to bring a *Monell* claim against DCFS. Compl. ¶¶106-108. It is axiomatic that a *Monell* claim is inappropriate against the state actors; *Monell* applies to municipal corporations. *See Shields v. Illinois Dept. of Corrections,* 746 F.3d 782, 796 (7th Cir. 2014). This claim is also barred by the Eleventh Amendment. *See* discussion at p. 8.

H.     **Plaintiffs Do Not State a Claim for Conspiracy Under §1983 (Count IX).**

As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, the facts set forth in a complaint against an individual must make a plausible, rather merely a speculative, case that relief may be obtained from that individual. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Bare allegations of conspiracy without factual support do not state a claim. *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999). Plaintiffs do not plead facts with sufficient specificity to maintain a conspiracy claim. Plaintiffs make generalized allegations against all Defendants that together they agreed to deprive them of their constitutional rights. This claim should be dismissed.

## I.     Plaintiffs Do Not State a Claim under 745 ILCS 10/9-102 (Count X).

Plaintiffs purport to state a claim against DCFS pursuant to 745 ILCS 10/9-102. Compl. ¶¶112-114. The statute provides: "[a] *local* public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages ... for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." 745 ILCS 10/9-102 (emphasis added). Section 9-102 directs local municipalities to indemnify its employees. *In re Consolidated Objections to Tax Levies of School District No. 205,* 193 Ill.2d 490, 502 (2000). DCFS is a state agency, not a municipality and this claim should be dismissed.

## Conclusion

WHEREFORE, for the foregoing reasons, Defendants, the Illinois Department of Children and Family Services and Debra Robinson request that this Honorable Court grant their motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

LISA MADIGAN
Illinois Attorney General

Barbara L. Greenspan
Assistant Attorney General
100 W. Randolph St., Suite 11-200          By:    s/Barbara L. Greenspan
Chicago, Illinois 60601                              Barbara L. Greenspan
(312) 814-7087                                          Assistant Attorney General