IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| C.H. and CH.H., by their parents and next friends PHOEBE ROBERSON and CHRISTOPHER HOPKINS, PHOEBE ROBERSON, and T'ERA HOPKINS, | ) ) ) ) ) | 14 C 8174 |
| Plaintiffs, | ) ) ) | Judge Jorge L. Alonso |
| v. | ) | |
| DETECTIVE GROSSMAN, UNKNOWN OFFICERS, and the VILLAGE OF SAUK VILLAGE, DR. JILL GLICK, UNIVERSITY OF CHICAGO MEDICAL CENTER, DEBRA ROBINSON, DCFS, and UNKNOWN DCFS SUPERVISORS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that defendants conspired to violate and violated their Fourth, Fifth, and Fourteenth Amendment rights, maliciously prosecuted them, and intentionally inflicted emotional distress on them. Defendants Glick, University of Chicago, Debra Robinson, and DCFS[1] have filed Federal Rule of Civil Procedure ("Rule") 12(b)(6) motions to dismiss the complaint. For the reasons set forth below, the Court grants the motions.

---

[1]Defendants Grossman and the Village of Sauk Village have answered the complaint.

**Facts[2]**

Plaintiff Phoebe Roberson is the mother of plaintiffs T'era Hopkins, C.H., and Ch.H. (Compl. ¶ 13.) On September 25, 2013, Roberson took C.H., to the doctor because C.H. had been "crying or 'fussing' more than usual." (*Id.* ¶ 16.) The doctor said C.H. had an allergy. (*Id.* ¶ 17.)

Thereafter, however, C.H. became irritable when Roberson tried "to teach C.H. how to hold her own bottle," so Roberson made another appointment with the doctor for mid-October. (*Id.* ¶ 18.) On October 4, 2013, when Roberson lifted C.H.'s arm, C.H. "cried out uncontrollably," so Roberson took C.H. to St. James Hospital. (*Id.* ¶ 19.) The staff at St. James hospital diagnosed C.H. with multiple arm fractures and reported the injuries to defendant DCFS [Illinois Department of Children and Family Services]. (*Id.* ¶¶ 20-21.) Defendant Robinson was the DCFS investigator assigned to C.H.'s case. (*Id.* ¶ 21.)

Before "any investigation or finding of wrongdoing on the part of Plaintiffs," DCFS implemented a safety plan, which included removing C.H. and Ch.H. from Roberson's home and putting them in the custody of her sister. (*Id.* ¶ 23.)

Defendant Glick, "as a liaison for defendant the University of Chicago Medical Center" and "in her capacity as a doctor with the Multidisciplinary Pediatric Education and Evaluation Consortium ('MPEEC') rendered an opinion concerning the status of C.H." (*Id.* ¶¶ 25-26.) Plaintiff does not allege what the MPEEC is, how the MPEEC and Glick became involved in C.H.'s case, or what opinion Glick rendered about C.H. However, it is reasonable to infer that Glick concluded C.H.'s fractures were the result of abuse. (*See id.* ¶ 31.)

---

[2]These are the facts the Court could glean from a complaint that is sparse on detail and chronology.

Subsequently, a pediatric orthopedist, Dr. Sullivan, who became involved in the case in an unspecified manner, opined that C.H.'s injuries were likely accidental, not the result of abuse. (*Id.* ¶¶ 33-34.)

Defendant Grossman began an investigation and learned that, around the time of C.H.'s injuries: (1) at least six people lived in Roberson's home; (2) C.H. attended a daycare center; (3) pictures had been taken of C.H. smiling, with her arms in the air; and (4) Roberson had taken C.H. to the pediatrician, who did not diagnose the fractures. (*Id.* ¶¶ 36, 39-42.) When Grossman visited Roberson's home, he said he believed one of "'the kids'" abused C.H. (*Id.* ¶ 43.) At that point, Roberson told Grossman to stay away from her children, and he told her "she would regret it." (*Id.* ¶ 45.)

On a subsequent occasion, Grossman and his partner returned to plaintiffs' home to talk to Roberson, who "did not want to talk about any accusations of criminality aimed at her and her family." (*Id.* ¶ 46.) Grossman and his partner responded, "Since you don't want to talk you are going to jail," and arrested Roberson and T'era Hopkins for child endangerment. (*Id.* ¶¶ 46-47.) Grossman told "DCFS that [Roberson] was being uncooperative to punish her by persuading DCFS to remove her kids." (*Id.* ¶ 52.) Thereafter, DCFS removed the children from Roberson's home and placed them in protective custody, which is where they remain today. (*Id.* ¶¶ 53, 65.)

DCFS' investigation into this incident resulted in an "indicated" finding against Roberson, meaning that credible evidence of abuse was found. (*Id.* ¶ 61.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Glick and the University of Chicago**

In Counts I-IV and IX,[3] plaintiffs seek to hold defendants Glick and the University of Chicago ("U of C") liable under 42 U.S.C. § 1983 for conspiring to and falsely arresting Roberson, T'era Hopkins, C.H. and Ch.H. and conspiring to and violating plaintiffs' substantive and procedural due process rights. Section 1983 creates a cause of action against certain government actors for unconstitutional actions they take under color of state law. *See id.* ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."). Private actors like Glick and U of C can be held liable under the statute only if: (1) "[they] conspire or are jointly engaged with state actors to deprive a person of constitutional rights"; (2) "the state compels the [unconstitutional] action"; (3) "the state controls a nominally private entity"; (4) "[the state] is entwined with [the private entity's] management or control"; (5) "the state delegates a public function to a private entity"; [or] (6) "there is such a close

---

[3]This count is actually denominated "Count IV," but because it falls between Counts VIII and X, the Court refers to it as Count IX.

nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (citations omitted).

In an attempt to satisfy the color-of-law requirement, plaintiffs allege that DCFS gives money to U of C "to support its participation in . . . the MPEEC," and that U of C pays Glick's salary with some of that money. (Compl. ¶¶ 27-28.) However, receiving state funding, "performing public contracts," or "serving a 'public function'" does not transform a private party into a state actor. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982). Thus, these allegations do not suggest that Glick or U of C acted under color of law.

Alternatively, plaintiff alleges that Glick "has an ongoing relationship with Officer Grossman and the Village of Sauk Village Police Department" and that Glick and U of C "committed [the acts alleged in the complaint] with knowledge and by agreement of [the other] defendants." (Compl. ¶¶ 30, 110.) Neither of these allegations, however, is sufficient to plausibly suggest that Glick and U of C conspired or acted jointly with any state actor. *See Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) ("A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights.").[4]

Moreover, even if Glick and U of C were state actors, plaintiffs' § 1983 claims against them would still fail. Glick could only be held liable under the statute if she were personally involved in the alleged constitutional deprivations, and U of C could only be held liable if the alleged deprivations occurred pursuant to one of its policies or practices, neither of which plaintiffs allege. *See Shields v.*

---

[4]Moreover, if Glick is employed by the U of C, she cannot, as a matter of law, conspire with it. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999) ("[U]nder the intracorporate conspiracy doctrine a conspiracy cannot exist solely between members of the same entity.").

*Ill. Dep't of Corrs.*, 746 F.3d 782, 796 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). Absent these allegations, plaintiffs have not stated § 1983 claims against Glick or U of C.[5]

In Count VI,[6] plaintiffs seek to hold Glick and U of C liable under state law for malicious prosecution. To state a viable claim, plaintiffs must allege: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 490 (Ill. App. Ct. 2014), *appeal denied*, 23 N.E.3d 1207 (Ill. 2015). Plaintiffs do not allege that Glick or U of C started a judicial proceeding against them, let alone one that was motivated by malice, lacked probable cause, and terminated in their favor. Accordingly, they have not stated a claim for malicious prosecution against them.

In Count VII, plaintiffs assert a claim of intentional infliction of emotional distress ("IIED"), which requires allegations that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.* (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). Plaintiffs' allegations, that U of C pays Glick, Glick gave her opinion about C.H.'s injuries, and Glick tried to stop Sullivan from giving his/her opinion until after the police

---

[5]Because plaintiffs have not alleged a viable § 1983 claim against Glick or U of C, the Court does not address the immunity arguments they raise.

[6]Count V is asserted only against defendants Grossman and the Village of Sauk Village.

6

finished their investigation (*see* Compl. ¶¶ 25-28, 31), do not even approach the level of conduct required to state an IIED claim. *See, e.g., Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251-52 (Ill. App. Ct. 1990) (upholding IIED claim asserted against defendant who knew plaintiff was susceptible to emotional distress, repeatedly propositioned her and offered her money for sex, fired her when she refused his advances, threatened to kill and rape her, harassed her family and psychotherapist, threatened to challenge custody of her child, and harassed her new employer with letters, phone calls, and spurious complaints to government officials).

In short, plaintiffs have not stated any viable claim against either Glick or U of C. Therefore, the Court grants their motion to dismiss.

**DCFS**

As a state agency, DCFS cannot be sued under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (noting that "a state and its agencies are not suable 'persons' within the meaning of section 1983") (citations omitted). Thus, the § 1983 claims asserted in Counts I-IV, VIII, and IX against DCFS and Robinson in her official capacity as a DCFS investigator are dismissed with prejudice.

Plaintiffs fare no better with their state-law claims against DCFS. With a few exceptions not relevant here, the Eleventh Amendment "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881-82 (7th Cir. 2012). Accordingly, any malicious

prosecution and IIED claim asserted in Counts VI and VII against DCFS or Robinson in her official capacity are dismissed without prejudice.

**Robinson - Federal Claims - Subject Matter Jurisdiction**

In Count III, plaintiffs allege that Robinson violated Roberson's due process right to occupational liberty. To state a viable claim, plaintiff must allege that Robinson "made stigmatizing comments" about Roberson, the "comments were publicly disclosed," and Roberson "suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Plaintiff does not allege any of these elements; rather, she asks that Robinson be enjoined from making disclosures about the "indicated" finding to Roberson's future employers. (Compl. ¶ 85.) Because Roberson is seeking relief for hypothetical action Robinson may or may not take at some future point, this claim is not ripe for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1988) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotations omitted); *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (plaintiff's "request[] that his prospective employers be given good references *in the event* [he] secures employment" held to be unripe) (quotation omitted) (emphasis in original). Accordingly, the Court dismisses Count III for lack of subject matter jurisdiction. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (noting that "[the] ripeness doctrine is drawn from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.").

**Robinson - Federal Claims - Merits**

In Count I, plaintiffs assert § 1983 false arrest claims against Robinson, which require them to allege that Robinson arrested them without probable cause. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011). The complaint contains no allegations that suggest Robinson had any involvement in Roberson and T'era Hopkins's arrest. Thus, Count I is dismissed.

In Count II, plaintiffs allege that Robinson deprived them of their substantive due process right to familial association. "The Supreme Court has long recognized as a component of substantive due process the right to familial relations." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018 (7th Cir. 2000) (citations omitted). However, "a balance must be reached between the fundamental right to the family unit and the state's interest in protecting children from abuse, especially in cases where children are removed from their homes." *Id.* at 1019. "In balancing these competing interests, courts have recognized that a state has [an] interest in protecting children from their parents [only if] it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.*

Viewed favorably to plaintiffs, the complaint suggests that Robinson first made the decision to take the children from Roberson's home pursuant to a safety plan, and later sought to have them placed in DCFS's temporary custody. (Compl. ¶¶ 21-23, 53.) It also establishes, however, that she had sufficient evidence to do so. Plaintiffs affirmatively allege that C.H. and Ch.H. were first removed from Roberson's home after St. James Hospital diagnosed C.H. with multiple arm fractures and reported them to DCFS as possible abuse. (*Id.* ¶¶ 20-21, 23.) They also allege that the children were later placed in DCFS's temporary custody after Dr. Glick opined that C.H. had been abused and Roberson refused to "talk [to the police] about any accusations of criminality aimed at her and her

9

family." (*Id.* ¶¶ 25, 46, 53.) These allegations establish that Robinson had "definite and articulable evidence giving rise to a reasonable suspicion" that C.H. had been abused and/or C.H. and Ch.H. were "in imminent danger of abuse." *Brokaw*, 235 F.3d at 1019. Thus, any substantive due process claim asserted against Robinson is dismissed with prejudice.

In Count IV, plaintiffs allege that Robinson falsely arrested C.H. and Ch.H. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Brokaw*, 235 F.3d at 1010 (quotations and footnote omitted). For the reasons stated above, plaintiffs' allegations establish that Robinson had probable cause to remove the children from Roberson's home. Therefore, the Court dismisses with prejudice C.H. and Ch.H.'s false arrest claims against Robinson.

Because plaintiffs have not alleged that Robinson, or anyone else, deprived them of a constitutional right, their Count IX § 1983 conspiracy claim fails as well. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."); *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988) ("In . . . a section 1983 constitutional-tort case . . . the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint.").

**Robinson - State Claims**

Plaintiffs fare no better with their Count VI malicious prosecution claim against Robinson. As discussed above, plaintiffs can state such a claim only if there was no probable cause for the contested judicial proceeding and the proceeding terminated in their favor. *See Szczesniak*, 21 N.E.3d at 490.

Because plaintiffs' allegations show that there was probable cause and that the proceeding resulted in an "indicated" finding against Roberson, they cannot state a malicious prosecution claim against Robinson.

The IIED claim asserted against Robinson in Count VII suffers the same fate. Plaintiffs' allegations show that Robinson removed C.H. and Ch.H. from Roberson's home because there was credible evidence of abuse. Her conduct was not, therefore, "extreme and outrageous" as required to state a claim against her for IIED. *See Swearnigen-El*, 602 F.3d at 864.

**Conclusion**

For the reasons set forth above, the Court grants the motion to dismiss of Glick and U of C [20] and dismisses without prejudice the claims plaintiffs assert against them. The Court also grants the motion to dismiss of DCFS and Robinson [55] and (1) dismisses with prejudice the claims asserted against DCFS in Counts I-IV, VIII, and IX and dismisses without prejudice the claims asserted against it in Counts VI and VII; and (2) dismisses with prejudice the claims asserted against Robinson in Counts II, IV, VI and VII and dismisses without prejudice the claims asserted against her in Counts I, III and IX. Plaintiffs have until August 10, 2015 to amend their claims against Glick and U of C and Counts I and IX against Robinson, and only those claims, if they can do so and comply with Rule 11. If plaintiffs fail to do so, the Court will dismiss those claims and this suit with prejudice.

**SO ORDERED.**  ENTERED: July 28, 2015

_____
**HON. JORGE ALONSO**
**United States District Judge**